May it please the court. My name is Carrie Jackson, and I, along with my co-counsel, Dennis Jones, represent the appellate in this case, David Taylor. We're here today on an appeal for Mr. Taylor's conviction on two counts of Hobbs Act robbery and one count of possessing a firearm and furtherance of that robbery. As a result of these convictions, Mr. Taylor was sentenced to a total of 336 months imprisonment. There are three issues that we raise on appeal today. The first issue is whether the Hobbs Act and 924C convictions should be reversed because the defendant was not allowed to present evidence regarding interstate-grown marijuana. Prior to trial, the government made a motion in limine to prohibit the introduction of evidence that marijuana grown and sold solely in Virginia would not affect interstate commerce. In their brief, in their motion in limine, the government cited Williams for the proposition that the robbery of a drug dealer per se affects interstate commerce. And based upon the government's interpretation of Williams, the court granted the government's motion and precluded the defendant from presenting this theory of the case. However, because Williams does not stand for the proposition that targeting marijuana dealer affects interstate commerce per se, excluding this evidence denied the defendant his constitutional right to make an adequate defense. Williams is pretty clear that we look at drug dealing as a class. Because if you look simply at an individual drug dealer, you're almost never going to get substantial impact upon interstate commerce. But that objection was raised in the Williams case. And Williams says, no, you have to aggregate it and look at drug dealing as a class. And drug dealing as a class certainly affects interstate commerce. Although in Williams, the court does consider the fact that drug dealing as a class affects interstate commerce. Because as they showed in Williams, only a de minimis effect must be shown. Williams doesn't stand for the proposition. How can we, I mean, how can we, it seems to me you're coming awfully close to asking us to overrule one of our prior decisions. No, your honor. Respectfully, I don't believe that's the case. And I don't think that's the case. Because in Williams, there was a stipulation made by the defendant that said that drug dealing in that case, that robbery of the drug dealer per se affected interstate commerce. And because the defendant made that stipulation in that case, that met the jurisdictional prong that the Hobbs Act requires. I'm not sure that whether there was a stipulation or whether it isn't, that that affects the general language in Williams or the language in Williams. That when you're considering these, you've got to consider drug dealing as a class. That you have to consider not the, when you're considering the effect under the Hobbs Act, you've got to consider the activity in the aggregate as having an effect. And your honor, I think that in U.S. v. Needham, which is a Seventh Circuit case, the court specifically addressed that issue. They discussed the difference. That was my problem with your brief, is you were referring to a Seventh Circuit case and our own precedent in Williams is rather different. I believe that the correct ruling of Williams, your honor, is to say that they proved both elements of the crime by showing that, through the stipulation, showing the jurisdictional predicate. And then they also showed that they were, in fact, drug dealers. So under that rationale, I believe that both were satisfied. And that's the same rationale that the court follows in the Second and Seventh Circuit. They also hold that you must show not only the jurisdictional predicate, which is what gives the federal court the authority to hear this case, but also that you have to show that they robbed the drug dealer. But I don't understand, again, in light of the Williams decision, how it's relevant, whether the marijuana or whatever drug there might be was grown in a particular state. I don't understand what relevance it has if there's a prior decision of the court in Williams which says drug dealing as an activity satisfies the effecting element of the Hobbs Act. I mean, you know, the problem I'm having here is you have a district judge with a pretty clear decision, and he follows the decision, which we're trying to get district judges to do in this circuit. And then we pull the rug out from under on appeal and create all kinds of riptides in the jurisprudence. That, you know, just as a jurisprudential method, seems difficult to me. I understand, Your Honor, and I would still contend that that's not what Williams said. But even if we assume that that is the ruling of Williams, I think that Williams can be distinguished from the facts of the current case. And that's what makes it relevant to the inquiry. In the present case, we're talking about the robbery of a marijuana dealer, which is something that can be grown in-state and never cross lines in order to not affect interstate commerce. The part of the interstate commerce that is affected is when it crosses those state lines. And the difference in the Williams case is that we're talking about a robbery of a cocaine dealer, which is a substance that necessarily travels in interstate commerce to reach the state of Virginia. The appellant wasn't concerned with himself with where it was grown. Their intent was to rob drug dealers of whatever drugs and whatever money they had, correct? I think that is correct, Your Honor. But I think that under that targeting rationale, that it still fails because they failed to show that there would have been an effect on interstate commerce. I think that from reading the cases under the targeting rationale, what it seems to show is that when there is proof that there's an effect on interstate commerce, that attempting to rob those drug dealers is enough to satisfy the jurisdictional predicate. But in a case such as this, where we haven't shown that there's an effect on interstate commerce, where the government hasn't met its burden beyond a reasonable doubt to prove that, then I believe that this is a different case. Well, how could there not be an effect on interstate commerce if you're targeting an activity that is clearly interstate and commercial in nature? And your whole intention in targeting that activity is to disrupt the commercial enterprise and the enterprise engaged in interstate commerce. And, you know, if you combine, you have an effect element and an intent element here, and if you combine the effect of drug dealing as a class upon interstate commerce, and then you have the defendant intending to target that very activity, how does that, I don't understand how that gets outside the Hobbs Act. I mean, what you seem to want is to have the Hobbs Act turn on exactly what they found in the robbery or what they, or where the marijuana was grown. And those are sort of incidental, and to have the jurisdictional inquiry turn on where the marijuana may have been grown or how much money you might find in a cash, let's say you're robbing a commercial establishment. Does it really matter whether you find a penny in the till or $500,000 or $500 in the cash register? I mean, can the Hobbs Act turn on those sorts of fortuities when it's very clear that the act was intended to target interstate commerce and to disrupt it? I think, to your first point, Your Honor, I don't think that it is relevant how much money or how many pennies in the till were actually taken from the robbery because of the minimal effect standard. There have been several decisions that have said that the amount that's taken is not what's important because we keep the standard so low. And additionally, Your Honor, I think that, sorry, I lost my train of thought. Additionally, as the Court has held both in Peterson, Parks, and Needham, which I know those are from different circuits as we've discussed earlier, but they're not requiring much proof at all to show that there was an effect on interstate commerce in each specific case. In Peterson, for example, all that was required, excuse me, Your Honor, in Parks, all that they required the government to show in order to uphold that there was an effect on interstate commerce and the jurisdictional predicate was met was testimony from a narcotics investigator that marijuana is almost exclusively trucked into the United States, predominantly through Mexico. In that case, they found that that was sufficient evidence for a reasonable juror to find that it affected interstate commerce. The problem is when we have a case such as this and there's no evidence whatsoever and we're dealing with something that can be grown and sold wholly within the state. When we look at the particular dealer, but that wasn't, that's the whole point of Williams is that you don't, the focus of it isn't the particular dealer and where the particular marijuana is grown, it's the activity of drug dealing that was targeted. It's the aggregate picture, not the particular or individual picture that under our precedent is germane. Again, Your Honor, I realize that we aren't reading Williams the same, so I'll move to my next point. I still concede that Williams doesn't have a, I still argue that Williams doesn't have a per se effect on interstate commerce for the reasons stated. No, I understand you haven't waived a thing. But moving on to my second issue, Your Honor, even the government failed to prove beyond a reasonable doubt their burden of, they failed to meet their burden of proof because they also failed to prove beyond a reasonable doubt that the drug dealers were in fact, or that the victims, excuse me, were in fact drug dealers. If I could point your attention to a few places in the record. You touched with attempt as well, right? What about the fact that the statute includes attempt? The statute includes an attempt to rob something that affects interstate commerce. So if the victims are not shown to be drug dealers in this case, then it's not something that robs interstate commerce because it no longer meets the commerce element. Then we're just talking about a robbery of an individual which this circuit has found doesn't fall under the Hobbs Act. And I think that the evidence on the record shows that they didn't meet this burden of proof. For example, on 241, one of the victims was called and on direct, poorly testified question, lines 13 and 15. So when you were living in Ridge Run, you were not selling exotic weed. Answer, no sir, I worked full time. And then again on page 260, on lines 8 through 12, question. Do you recall telling Detective Hartson you're no longer in the drug trade? Yes, sir. I told him that when I was 18, the first time when I lived on H Street, that I smoked marijuana and that I sold it some. And then you also have testimony from Graham, who is the other victim of this first robbery on page 273, where the question is asked, lines 15 through 20. Was the marijuana that you smoked, was that just for personal use? Oh, yes, ma'am. What are you driving at here? That they failed to prove beyond a reasonable doubt that the victims were in fact drug dealers to trigger the commerce element of the Hobbs Act. Well, whether they intended to target drug dealers, wouldn't that be a jury question? Yes, Your Honor. That would be a jury question, whether they intended to rob drug dealers. But within that question, the jury is also going to have to find that they were in fact drug dealers. They can't intend to rob drug dealers if they weren't drug dealers. And that's the part that triggers the Hobbs Act. You can still intend to rob drug dealers just because they're not actually drug dealers. But that connection, Your Honor, is too attenuated under the Hobbs Act. Intending to do something that would never affect interstate commerce isn't enough of an effect to be able to satisfy the jurisdictional predicate. In the Hobbs Act, there are two elements of the crime. And one is that you must prove beyond a reasonable doubt that it affected interstate commerce. In order to do so, there has to be some evidence on the record that it did in fact affect interstate commerce. And if they aren't drug dealers. And in the second robbery, the ATF agent testified that he had interviewed the victim, Mr. Lynch, and that Mr. Lynch had stated he was involved in a drug deal prior to the home invasion where he purchased marijuana. That's true, Your Honor. But we're talking about a standard of beyond a reasonable doubt. That testimony by the officer is uncorroborated by Mr. Lynch, who didn't take the stand himself. And additionally, his wife did get on the stand and explicitly stated that neither of them were drug dealers. And she even quipped that she was insulted by that. It's a jury question as to whether you credit that sort of evidence. And you have, Alma, the jury could well have believed that these people were, in fact, drug dealers. It was based on the fact that Fitzgerald had selected these folks based on a number of tips that the occupants were, in fact, drug dealers. And there was testimony that the group expected to find drugs and money in the robbery. I think that they actually took jewelry and electronics and CD players and things that may well have been proceeds of drug crimes. There was testimony with the Worley Graham robbery that the house had been robbed before for potentially drug-related reasons, that Graham himself was using drugs at the time of the robbery that Worley had used and sold drugs previously. The jury could have looked at all this evidence and said, you know, in fact, these people were, in fact, drug dealers. I mean, I don't understand. That's just a simple jury question, isn't it, as to what evidence to credit? I know that I'm over time, but if you'd like, I'll respond to you quickly. Sure, go ahead. I think that the evidence that you have pointed to in the record, Your Honor, does go to establish that the defendant did intend to rob drug dealers, but not to the specific fact that they were drug dealers. But a jury is able to credit circumstantial evidence, and a jury is able to draw inferences, and all the evidence taken in its totality would allow the jury to draw the inference. In fact, it's a good bit more than an inference. If these folks, you know, not only did they intend to rob drug dealers or attempt to rob drug dealers, but that they were, in fact, drug dealers. I absolutely agree, Your Honor, that the jury can construe these things and can use circumstantial evidence to find this, to make that finding. But I think that if you look at the evidence in the totality of the circumstances, it doesn't meet the beyond a reasonable doubt burden. You have evidence from Fitzgerald, who's a cohort of the defendants, who testifies a lot about how they intended to rob a drug dealer. But he also testifies that he wasn't sure they were drug dealers. He testifies that these were, quote, hit or miss operations. He testifies that he told the other defendants that he wasn't sure that they were actually drug dealers. There's also testimony from- You run into another problem, don't you, with the word attempt, as it's used in the Hobbs Act? That's the point that I was attempting to make to Judge Thacker earlier, Your Honor, is that an attempt to rob someone who is not a drug dealer doesn't meet the jurisdictional predicate of the Hobbs Act. To attempt to rob someone who isn't engaged in commerce, an individual, isn't enough proof to engage the predicate of the Hobbs Act. All right, we thank you. Thank you, Your Honor. Ms. Hudson. Thank you, Your Honor. Here on appeal, as we did in the district court, Your Honor, the government has planted its flag with the Williams case, and we remain convinced that under that authority in this circuit, the district court correctly excluded the evidence of any intrastate marijuana that the defense might have offered and that the United States otherwise met its burden on the jurisdictional element for the Hobbs Act. As the court has noted, there was significant evidence in the record from which the jury could have easily concluded that Mr. Lynch as well as Mr. Worley were drug dealers, but our position is that with regard to the charge and the conviction in this case, which included attempt, that the jury could well have found that the defendants intended to rob drug dealers, targeted drug dealers- Do you think the intent to rob drug dealers is enough, irrespective of whether they were in fact drug dealers? I think it is, Your Honor, and again, we think the record supports or would support the jury's finding that they were drug dealers, but even absent that, I think this court's holdings in Brantley and Buffy reach the government's or support the government's- So we really don't know whether the jury found that there was an attempt or whether they were in fact, but I do gather that you- whereas the attempt may be sufficient in light of the statute to convict, and of course the charge that was given by Judge Conrad reflected almost verbatim the statutory language. My point was that given the circumstantial evidence here, given the tips that Mr. Fitzgerald and his crew had received, given the jury and the electronic devices that were taken, given the past history of drug use and all that the jury could have inferred, not only did they attempt to rob, but they did in fact. And I think that's exactly right, Your Honor, and I think also under the Buffy and Brantley decisions in this circuit, it is clear that if the facts are as the defendants believe them to be, and they intended to commit this crime, they intended to commit- excuse me, intended and attempted to rob drug dealers. And as this court said in Buffy, the defendants can find no shelter in their misperception of reality, even if it was a misperception. And so we think that we did meet our burden under either theory there, but I think our stronger argument is clearly- You have to ask, what did Congress intend with this statute, the Hobbs Act? And what they really intended to do, just as an overall matter, was to protect interstate commerce and activities that generally engaged in interstate commerce from criminal disruption. And that's where the Hobbs Act goes. It was written and drafted by Congress in the broadest conceivable terms. And its purpose was to protect this activity in interstate commerce from criminal disruption. And that's what you have here. And you can't, I don't think, take a statute written with this breadth and try to chew it up. I agree, Your Honor, and I think that the Supreme Court's decision in Gonzales v. Raich also highlights the court's point there when it clearly includes the concept, the very straightforward concept of supply and demand and the notion that with regard to this intrastate marijuana that the government believes is absolutely incorporated there, that the homegrown product or the domestically grown product affects just as much interstate commerce because it clearly removes the ability for an out-of-state dealer, for example, to sell his product in that state. At least I think that's clear from the Raich case. It is an odd twist here, though, that drug dealing and illegal activity is part of interstate commerce and it doesn't, when Congress passed the Hobbs Act, I presumably was thinking of legitimate interstate commerce. But we have an awful lot of decisional law, I guess, which says that, okay, that it doesn't matter whether the commercial activity is legal or unlawful as long as it's commerce. I mean, but that's sort of odd, isn't it? I think it is odd, Your Honor. We've had those conversations internally and I feel compelled to rely on the cases that Your Honor is referring to, I think. I mean, I don't know if there's much case law to the contrary, but it just... Well, and even the Hobbs Act itself, in the language defining commerce, includes any and all commerce over which the United States has jurisdiction. So on that theory as well, or just on the straight reading of that language, I think it encompasses all drug dealing activity as this Court has held and as I think the Supreme Court has clearly indicated in Raich. But it is an interesting question, but I don't think it's one that the Court has to answer. The answer is you want to discourage disruption of commerce in drugs. The question is primarily you want to encourage disruption of it by law enforcement rather than by this particular means. It is an interesting question, and thankfully I don't think the Court has... It seems like we were riding on a blank slate, but I don't think the case law leaves much doubt on it. I agree, Your Honor. Then that's the government's position as well. Unless there are any further questions, we'll be happy to rely on our brief otherwise. Ms. Halifax, any questions? No, thank you. No questions. Thank you, Ms. Hudson. Mr. Jones? Thank you, Your Honor. Marsha, please record. I'm Dennis Jones, along with Ms. Jackson. We represent the felon in this matter. The target of this case was not drug dealers per se, but throughout the evidence, Mr. Fitzgerald testified that the object was, quote, marijuana drug dealers. That was explored on numerous occasions by the government. Judge Conrad examined Mr. Fitzgerald. His testimony was always that they were focusing on marijuana drug dealers. To me, that is significant because, as Judge Wilkinson, as you inquired about the class, it's been my experience that drug dealers is a concept, is a business, if you will, but there are subclasses within that general described occupation. I've been doing this for 40 years, eight of which was prosecutor. What my finding was is that you have cocaine dealers, and they traditionally stay within that field, cocaine or crack cocaine. You have heroin dealers. It's very seldom a crossover. You have the pill pushers, prescription pill pushers, oxycodone. We've had all those cases come before us. Right now, we have an issue. Where is this leading, this fact that we ought to have the Hobbs Act depend on what drug it is? Well, to me, I was getting to that. I think, as I read Williams, Peterson— Marijuana is not all homegrown. It's not, but that's really the issue here. It can be pretty profitable interstate. It is. Just the day that we filed our brief, there were 300 plants that were seized in Buckhannon County, Virginia. Some of it's probably going to be transported out of state, if the truth be known about it. But if we're going to go at this drug by drug, are we to take judicial notice? No, sir. I think that it is an element of the case that requires some proof. In the Williams case, for example, there was a stipulation that was signed off on by the defendant and read to the jury, and that was a cocaine and heroin case. And that stipulation was, conceded the point, the jurisdictional point, that it traveled in interstate commerce. And in the Parks case, for example, in the Second Circuit, which I read— But, you know, when you get down to it, and you're looking not at the Hobbs Act, but you're looking at the proper scope of the Article I, Section 8 power in commerce, and you look at a case like Wickard v. Filburn and the Supreme Court's Commerce Clause jurisprudence in Lopez, they've always gone at this question of effect in the aggregate. Lopez said, you know, the question is, does the activity taken that Congress wishes to regulate, does the activity taken in the aggregate have an effect, a substantial effect upon interstate commerce? They've never gone at it particular player by particular player by particular player. And wouldn't you say that just in the Article I, Section 8 context that Wickard v. Filburn and Lopez support the kind of aggregation that our own precedent and Williams undertook? I think it does, Your Honor, but I also think that Peterson, Parks, and Needham also take that into consideration. The only—there's also a much greater privilege here, and that's the Fifth and Sixth Amendment right of a defendant to put on his theory of the case. Mr. Taylor was denied that right because his theory of the case was to present evidence that showed and demonstrated to the jury that the marijuana dealers, that it did not travel in or affect interstate commerce. That's his theory of the case. That was his theory of the case the first time it was tried, and it was a hung jury, and that was his theory of the case the second time, in addition to the fact that the victims in this case were not, in fact, drug dealers. You have—the defendant is entitled to present something, some degree of evidence on this. That makes it a mixed question of law and fact in the application of Williams. All right. We thank you, sir. Thank you. It's a pleasure being before you. I'd like to thank you and Ms. Jackson both for your contributions to the court. Ms. Jackson, we always enjoy having student counsel, and they invariably do a fine job, as you've done this morning. Thank you, Your Honor. We'd like to adjourn the court and come down to group counsel. This honorable court stands adjourned, signed, and died. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Clyde H. Hamilton